<hr/>

(No. 73-CC-0406— )

MARGARET M. KLEPPER, Administrator of the Estate of Charles E. Klepper, et al., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 23, 1979.*

MC CONNELL, KENNEDY, QUINN & JOHNSTON, GOMIEN, MASCHING & NEVILLE, LTD., and COSTIGAN & WOLLRAB, all for Claimant.

CADIGAN & GILLESPIE (PATRICK J. CADIGAN, of counsel), for Respondent.

HOLDERMAN, J.

This is a claim brought by Margaret M. Klepper, administrator of the estate of Charles E. Klepper, deceased, for the alleged wrongful death of the said Charles E. Klepper, and by Willie L. Anderson, d/b/a Willie L. Anderson Trucking Company, for the loss of a tractor-trailer. By order of this Court entered June 11, 1976, the Reliance Insurance Company, workmen's compensation insurance carrier for Willie L. Anderson Trucking Company, was allowed to intervene, having paid $29,543.00 in workmen's compensation benefits to Margaret M. Klepper, as widow of Charles E. Klepper.

On May 16, 1972, at about 1:30 p.m., the deceased, Charles E. Klepper, was driving a tractor-trailer unit owned by Willie L. Anderson Trucking Company, in a northerly direction on Route 66, approximately 1.4 miles south of Lexington, Illinois. The right front (passenger side) of the tractor-trailer unit struck a State of Illinois Department of Transportation truck, causing Mr. Klepper to be thrown out of the tractor onto a grass median strip. Mr. Klepper died as a result of his injuries.

Evidence in this case shows that the accident occurred on a level strip of road, with dry pavement and evidently very little traffic.

The only eyewitness to the accident besides the driver of the State truck was one Kermit Hopkins, a truck driver who was approaching from the north. His deposition was taken and introduced by stipulation. He testified that he was driving south in the left hand lane of Route 66 and that, before the accident, he saw State of Illinois trucks northbound painting stripes on the highway. He testified he thought there were three trucks involved.

According to his testimony, the second truck, the one immediately ahead of the one involved in the accident, was painting lines on the highway. He testified that the first two trucks were travelling in the right hand lane, which was the easternmost northbound lane, and the second truck was doing the striping. The third truck, he stated, was a supply truck and was in the left lane, or more in the left lane than the right lane. He testified that the supply truck, or paint truck as he referred to it, did not have any signs on it, either front or back. He also testified that as the semi approached, the supply truck swerved back over to the right lane, the semi then swerved and came over to the left lane and hit the back end of the supply truck, after which the State truck went into a skid. The semi then went into a jack, as he recalled it, to the right hand side, and when it came back into the left lane, the driver was thrown out, resulting in the death of the driver of the truck.

The witness testified he was several hundred feet north of the scene of the accident when it occurred.

Attached to the witness' deposition was a sketch made by him showing clearly his account of the accident and showing the path of the State truck from the left hand lane directly into the path of decedent's oncoming semi-trailer.

This witness testified he did not see any signs or flashing lights nor did he see any signal of any kind or character.

The supply truck, after it was struck in the rear, left the highway on the right, or east, side of the road and came to rest against the railroad embankment. The damage to the semi was primarily on the right hand, or passenger's side, of the cab.

The testimony of this witness is in sharp contrast to the testimony of other witnesses and the physical evi-

dence at the scene of the accident. This witness was the only one testifying to the fact that there were three State trucks present.

Richard D. Brantley, driver of the supply truck, testified there were two trucks, and not three, present. He testified he was approximately 1,500 feet behind the striping truck in the right hand lane and on the back of his truck was a large sign, facing northbound traffic, that read: "Pass on the Left" and "Slow Moving Vehicle Ahead."

There is evidence that some distance back of both trucks, approximately two miles south of where the accident occurred, there was a sign warning motorists of the painting crew ahead. The evidence shows that other witnesses who were on the scene shortly after the accident occurred testified that the flashing lights on the back of the supply truck were in operation and that there was a warning sign on the back of the truck, which was a sign six feet six inches high in the center part with a bottom panel three feet six inches high and a top panel two feet high and nearly six feet wide. This sign, as shown by a picture introduced in evidence, was knocked off the truck and lay on the ground where the truck finally stopped.

Evidence clearly indicates there was not any other traffic on the highway in this vicinity at the time of the accident and the State truck was struck in the rear with considerable force. This indicates the truck driven by the deceased was travelling at a rather high rate of speed despite the two-mile warning sign, despite the flashing lights, and despite the warning sign on the back of the truck.

Claimant's case rests entirely upon the theory that the State truck hit by Claimant was pulling from the right lane into the left lane.

An examination of the record indicates, as shown by Respondent's Exhibit 1, that more damage was done to the right hand, or passenger's side, of the semi than was done to the driver's side. Respondent's Exhibit 2 shows the size of the sign and the lights on the vehicle at the time of the accident. Respondent's Exhibit 5 is a picture showing the scene of the accident taken from the north. This shows dark spots on the pavement, evidently from spilled paint that was on the supply truck. It is to be noted that these dark spots are primarily in the right lane with very little, if any, extending over into the left lane.

Respondent's Exhibit 6 shows the State truck against the railroad embankment with the right side of the truck knocked to the right and the sign laying on the ground behind it.

Respondent's Exhibit 6 shows the State truck against the railroad embankment with the right side of the truck knocked to the right and the sign laying on the ground behind it.

Respondent's Exhibit 8 was a picture taken from the rear of the State truck showing an indentation on the left rear end of the State truck, the sign on the ground behind the truck, and the right side of the rear of the truck inclining to the right. Respondent's Exhibit 10 is a view to the north and northwest showing the skid marks beginning on the right hand side of the pavement and swerving to the left. This picture also clearly demonstrates that most of the debris was primarily along the right side of the pavement and a considerable portion on the right shoulder.

Respondent's Exhibit 11 is another picture facing north and northeast showing the skid marks and debris primarily on the right hand side of the road.

Respondent's Exhibit 12 is a picture looking to the northeast showing a skid mark on the right hand side

swerving to the left and most of the debris on the right hand side of the road.

Respondent's Exhibit 13 is a view to the northeast and shows the State truck involved in the accident directly east of the debris which is on the right hand side of the road and the skid marks coming from the right hand side of the road onto the left.

Respondent's Exhibit 14 is a view looking south (into the northbound lane) and clearly emphasizes this was on a long, level, straight highway with nothing to obstruct the view of the users of the highway.

Respondent's Exhibit 15 is a picture looking north on the highway showing a closeup of the skid marks and the debris on the pavement. This picture again emphasizes the fact that the debris is primarily on the right side of the road and the State truck is directly east of said debris.

These exhibits clearly illustrate the fact that this was a long, level, straight highway with the pavement dry at the time of the accident, and that the accident, according to the debris, was on the right hand side of the road. The skid marks clearly indicate that Claimant's truck was evidently travelling at a high rate of speed and, for some reason, did not observe the State truck until it was too late to avoid the accident which occurred when the semi swung to the left and skidded for approximately 140 feet before the collision occurred.

There is no explanation of any kind or character in the record as to why the State truck, in broad daylight, with a warning sign two miles behind the scene of the accident, and a warning sign and flashing lights on the truck itself, was not observed by the deceased.

We therefore have a situation where a State truck with a large sign placed on the back along with flashing

lights, and warning signs placed some two miles from the scene to warn travelers, was struck by a semi at a high rate of speed from the rear.

This Court has repeatedly held that before recovery can be made in cases of this kind, Claimant must show the State was negligent, that Claimant was not guilty of contributory negligence, and the proximate cause of the accident was the negligence of the State. See 30 Ill. Ct. Cl., 32, 565.

It is the opinion of this Court that the State was free from contributory negligence and that the negligence of the deceased was the proximate cause of the accident.

Award denied.